IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | FACTUAL BASIS |
| | : | |
| V. | : | |
| | : | |
| DAVID TSUI | : | 1:07CR430-1 |
| DR. 2 SHOES, INC. | : | 1:07CR430-2 |

NOW COMES the United States of America, by and through Anna Mills Wagoner, United States Attorney for the Middle District of North Carolina, and as a factual basis under Rule 11, Federal Rules of Criminal Procedure, states the following:

## Count Two - 18 U.S.C. 1035

On or about February 4, 2003, the defendant completed a Patient Delivery Intake form for patient N.J.[1] in connection with the filing of a claim for diabetic shoes with the Medicare program. Under the program, patients who are certified by a physician to be diabetic and in need of therapeutic shoes and shoe inserts will receive one pair of shoes and shoe inserts from the Medicare program per year. See 42 U.S.C. 1395L(O) and 1395X(S)(12). The regulations require the suppliers of shoes, such as DAVID TSUI and DR. 2 SHOES, INC. to list the unique physician identifying number (UPIN) of the referring physician on the claim form. The Medicare program assigns each participating physician a UPIN to identify and track that provider. Additionally, the supplier of shoes must

---

[1]The initials of Medicare patients were used in the indictment to protect their privacy.

indicate on the claim form that the supplier maintains documents, such as the Patient Delivery Intake forms and doctor certifications, which support the legitimacy of the claim. Medicare regulations require providers to maintain these records for five years.

For patient N.J., the defendants listed a UPIN of "RES-000" on the claim form indicating a medical resident prescribed the diabetic shoes. The Medicare program does allow medical residents to use this temporary UPIN code for a brief time until assigned a permanent UPIN. However, Dr. Tsui was not a medical resident at the time the claim was filed and was not permitted to use the resident UPIN. Dr. Tsui was never assigned a Medicare UPIN and was not licensed to practice podiatry in North Carolina. Medicare is and was a federal healthcare benefit program affecting commerce. The Patient Delivery Intake form maintained by Dr. Tsui contained a materially false entry in the block entitled "UPIN" where Dr. Tsui unlawfully and falsely listed a temporary resident code of "RES-000." A claim was filed on or about March 14, 2003, for shoes and inserts and the defendants were paid $105.50 and $114.46 respectively by the Medicare program.

<u>Count Twelve - 18 U.S.C. 287</u>

On or about August 31, 2004, the defendants submitted a materially false claim to the Medicare progarm for diabetic shoe inserts for patient B.L. The salesman employed by the defendants

2

correctly obtained the name of patient B.L.'s physician and a certification form was faxed by Dr. 2 Shoes, Inc. to the doctor who quickly faxed the form back to Dr. 2 Shoes, Inc. indicating that the patient was not diabetic. Nonetheless, several days later the defendant submitted a claim to Medicare indicating the patient had diabetes and was entitled to diabetic shoes and inserts. The defendants received $158.40 for the inserts from the Medicare program.

### Count Seventeen - 18 U.S.C. 287

On or about October 26, 2004, the defendants submitted a materially false claim to the Medicare program for diabetic shoes for patient M.L. The defendants knew at the time they filed the claim that patient M.L. was not diabetic because her doctor completed and returned to the defendants a certificate on October 12, 2004, indicating the patient was not diabetic. The defendants were paid $105.60 by the Medicare program for the diabetic shoes.

### Count Thirty-Seven - 18 U.S.C. 1343

On or about July 3, 2005, the defendants submitted a materially false claim by means of an interstate wire to the Medicare program for custom molded diabetic shoe inserts allegedly supplied to patient E.B. A review of Dr. Tsui's records reveals that Dr. Tsui himself acted as the salesman for this patient and Dr. Tsui completed the Patient Insurance Delivery Information form. This form is supposed to contain the name and phone number of the

3

patient's primary care doctor so that a certification of necessity for the diabetic shoes can be obtained. However, the intake form for patient E.B. did not list a primary care doctor. When the defendants submitted the claim, they were required to list the UPIN of a doctor who supposedly was certifying the need for diabetic shoes. The defendants used an unauthorized UPIN by listing the UPIN of Dr. K.R.[2] without his permission in the electronic claim submission. Dr. K.R. practices in Arkansas and does not know the patient. The defendants file, obtained by subpoena, did not contain any physician certification for this patient. The defendants received a payment of $173.47 for diabetic shoe inserts as a result of the claim.

### Count Forty-Two - 18 U.S.C. 1347

On or about November 16, 2005, the defendants executed a scheme to defraud the Medicare program by submitting a materially false claim for allegedly supplying custom molded diabetic shoe inserts from a model of patient's feet to patient W.G. The Medicare program requires that only specially trained people such as podiatrists or orthotists measure and fit the diabetic shoes and inserts. See 42 U.S.C. 1395X(S)(12). Inserts that are custom molded from a model of a patient's foot are more expensive to make and Medicare reimburses suppliers such as the defendants at a

---

[2]Only the initials of the victim doctor were used in the indictment.

4

higher rate for that service.  The claim submitted for patient W.G. was false because the salesman was not trained or qualified to fit diabetic shoes and inserts, but in fact was a barber who received payments from the defendants for every patient recruited.  The defendants received a payment of $173.47 from the Medicare program in connection with this materially false claim for diabetic shoe inserts.  Medicare is and was a health care benefit program administered by the federal government which affected commerce.

This the 26th day of February, 2008.

Respectfully submitted,

ANNA MILLS WAGONER
UNITED STATES ATTORNEY


/S/ ROBERT M. HAMILTON
Assistant United States Attorney
LASB #1400
United States Attorney's Office
Middle District of North Carolina
P.O. Box 1858
Greensboro, NC  27402
Phone:  336/333-5351

5

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA          :
                                  :
              V.                  :
                                  :
DAVID TSUI                        :          1:07CR430-1
DR. 2 SHOES, INC.                 :          1:05CR430-2


CERTIFICATE OF SERVICE

       I hereby certify that on February 26, 2008, the foregoing was

filed with the Clerk of the Court and I hereby certify that the

document was delivered either in person or by mail to the

following:

William Woodward Webb, Esq.
127 West Hargett Street
Suite 104
Raleigh, NC 27601

and

Mr. James Craven, III
Attorney at Law
PO Box 1366
Durham, NC 27702


                              /S/ ROBERT M. HAMILTON
                              Assistant United States Attorney
                              LASB # 1400
                              United States Attorney's Office
                              Middle District of North Carolina
                              P.O. Box 1858
                              Greensboro, NC  27402
                              Phone:  336/333-5351


6